# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DE'ANGELO R. HAMILTON,

      Petitioner,

                                **Case No. 2:15-cv-3092**

      v.                           **JUDGE JAMES L. GRAHAM**

                                  **Magistrate Judge King**

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 6), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> All charges against appellant arose out of the robbery committed by two men against Bradley Nguyen in Franklin County, Ohio on the night of May 15 and early morning hours of May 16, 2013. The Franklin County Grand Jury indicted appellant on one count of aggravated robbery, two counts of robbery, one count of kidnapping, and one count of having a weapon under disability. All counts carried a firearm specification and the first three carried a repeat violent offender specification. Before trial, the state dismissed one of the robbery counts as duplicative, and appellant waived jury trial on the weapon under disability charge. The jury convicted appellant of the three principal counts but acquitted him of the associated firearm specifications. The court then acquitted appellant of the weapon under disability charge and repeat violent offender specifications. The court merged the three offenses for sentencing as allied offenses committed with a common animus.

The state elected sentencing on the aggravated robbery conviction, for which the court imposed a term of nine years.

\*\*\*

The state established its case against appellant primarily through the testimony of the victim, Bradley Nguyen. Nguyen testified that, at the time of the robbery, he had been essentially homeless for perhaps 18 months, staying with friends and relatives or living outdoors. His unstable circumstances were largely the result of his illegal drug use, which had evolved to heroin use in the year preceding the robbery. Despite these circumstances, he was employed through most of this period and had a steady girlfriend.

In early 2013, Nguyen moved in with a friend and his family, making a diligent effort to remain sober. He obtained a new job and began saving money to get an apartment where he could live with his girlfriend closer to his place of work. They secured a sublease from friends who were vacating an apartment in the Reynoldsburg area and began moving their possessions in. Nguyen had $650 in his pocket for rent and another $50 in his wallet for gas and other moving expenses.

During the course of Nguyen's initial testimony, the state introduced a map and allowed him to indicate an apartment located at 5782 Channingway Court, which Nguyen identified as the apartment he intended to move into. On the day in question, Nguyen and his girlfriend had parked their car nearby with their possessions inside and were moving the possessions into the apartment. Late in the evening, a man approached Nguyen in the parking lot, and Nguyen recognized him as someone he knew from casual observation on a previous occasion but had never had a conversation or other contact with. Nguyen described the man as having a distinctive appearance, very tall and thin with tattoos on the left side of his face. Nguyen first observed this individual, later identified as appellant's alleged accomplice, Alphonzo Evans, standing in the parking lot with a group of people.

Evans approached Nguyen and stated that he had marijuana available for sale. Nguyen responded that he could not afford to buy it.

Evans then offered to share some marijuana and smoke it with Nguyen if Nguyen would give him a ride someplace. Because Nguyen still had frozen food and other items in the car and his girlfriend was eager to complete the move, Nguyen was reluctant

to take up the offer. Evans assured Nguyen that the ride would not take him far away and would cause little delay. Nguyen was interested in smoking marijuana that he otherwise would be unable to afford and eventually consented to give Evans a ride.

Continuing his testimony and again referring to the proffered map, Nguyen pointed out the route that he and Evans followed for a few minutes as they drove to a nearby apartment complex, Century City. During the course of the drive, Evans used Nguyen's phone to call his own phone so that they would have each other's number in order to communicate for future marijuana transactions. Evans also used Nguyen's phone to call another person at their supposed destination to let that person know he was on the way with a companion.

Upon their arrival at the Century City complex, Evans and Nguyen were met by a third individual, later identified as appellant. Nguyen described this man as also in his mid-twenties but of a much shorter, stockier build than Evans. Evans and his cohort then stated that it was too hot outside and there were too many other persons present to smoke marijuana in the parking lot and invited Nguyen to an upstairs apartment. When Nguyen entered the apartment, there was a woman present who left the front room at appellant's urging. Evans then stated that he had to use the bathroom, but returned immediately with a gun in his hand and initiated the robbery. Nguyen described the weapon as a large silver-plated revolver. The two men demanded that Nguyen empty his pockets and produce his wallet. Nguyen gave them his car keys, cell phone, and wallet containing $50.

Disappointed with the contents of Nguyen's pockets, the robbers forced him to strip and discovered a small plastic pellet gun tucked into Nguyen's waistband. The robbers became upset and accused Nguyen of intending to rob them with the pellet gun. At this point in the robbery, appellant became the primary actor, wielded the gun, and made the associated threats. They made Nguyen strip off all his clothes, at which time the $650 reserved for his rent fell out of his pocket. The robbers counted the money and told Nguyen to get dressed, allowing him to recover his wallet and associated identification. They threw his car keys at him but refused to return his cell phone or pellet gun. As Nguyen departed the apartment and descended the steps to his car, appellant repeatedly said that he would shoot Nguyen if he ever returned to the area.

Nguyen was able to get in his car and immediately leave the complex, driving to a nearby Speedway gas station where he called

9–1–1. A Reynoldsburg police officer responded to the location, and Nguyen made a statement at that location. He accompanied Officer David Burks to the Century City apartment complex and pointed out the building and apartment where he had been robbed. Officer Burks then took him back to the Reynoldsburg police station. At the police station, Reynoldsburg police allowed Nguyen to log onto his cell phone account and see if his phone was in use by the robbers. They found that the account was not updated sufficiently to allow him to determine if this was the case.

Nguyen stayed at the Reynoldsburg police station for the night, and the next day accompanied police as officers made a forced-entry raid on the apartment that was the scene of the robbery. Nguyen stayed with an officer in the parking lot some distance from the raid. Eventually the officers secured three individuals for Nguyen to identify, two men and a woman. Nguyen excluded the two men as his assailants. The third individual he identified as the female who was at the apartment the night before but had not participated in the robbery.

Approximately four days later, Reynoldsburg police invited Nguyen to come to the police station and look at a photo lineup based on further information police had developed regarding possible suspects. He was able to identify appellant with 100 percent certainty as the stockier, shorter of his two assailants. Some time later, on or about June 10, Nguyen was shown another photo lineup and identified with 100 percent certainty Evans' picture as the taller, thinner of the pair, the one bearing facial tattoos.

In his trial testimony, Nguyen further identified a picture of Evans holding a gun as depicting the same gun used in the robbery. He then identified appellant in open court as one of his robbers.

On cross-examination, Nguyen testified that he had been arrested and convicted for an unrelated misdemeanor theft offense after the robbery occurred. He had failed to pay the resulting fine and court costs, leading to issuance of a warrant. He confirmed that the warrant was still outstanding on the day of the current trial and that he had only appeared in court after a discussion with the prosecutor over whether the outstanding warrant would be set aside for purposes of allowing him to testify without being taken into custody. Nguyen rejected the proposition that he was only testifying in order to fulfill an agreement to have the warrant set aside. Nguyen also denied on cross-examination that he had met Evans and appellant on the night in question in order to purchase

quantities of marijuana for resale. Nguyen also denied the suggestion that he had accompanied Evans to the apartment in order to sell appellant or other persons some pills that Nguyen was carrying in a concealed container disguised as a pop can.

Officer Burks testified for the prosecution and described his participation in the investigation following the robbery. Officer Burks testified that on the night in question he responded to a dispatch to the Speedway gas station located at Brice Road and Livingston Avenue. The victim had called in a robbery, and Officer Burks identified Nguyen as the reported victim when he arrived at the gas station. Nguyen gave Officer Burks physical descriptions of his robbers and the location of the apartment. Nguyen described the weapon as a large silver revolver.

From Nguyen's description of the apartment, Officer Burks was able to identify it as apartment 6266 in the Century City apartment complex, differing only slightly from the number 6366 that Nguyen recalled at the time.

Based on Nguyen's statement that the robber had used Nguyen's phone, Officer Burks attempted to assist Nguyen at the police station in finding what numbers had been called, since it would reveal one or both robbers' phone numbers. They were unable to ascertain these numbers at that time.

The next day, Officer Burks took Nguyen to the vicinity as the SWAT team made a forced entry at the apartment in question. Nguyen then observed three persons secured in the raid, excluding two of them as robbers while confirming the third as the non-participant female seen in the apartment when he first arrived with Evans.

Officer Brian Marvin, also of the Reynoldsburg Division of Police, similarly testified regarding his participation in administering a blind photo lineup to Nguyen, during which Nguyen identified Evans as one of his robbers. Officer Marvin stated that during this procedure, the chief investigating officer on the case, Detective Kevin McDonnell, deliberately removed himself from the presence of Nguyen in order to avoid influencing the choice.

Detective McDonnell testified that he was the lead investigator on the case. Upon being advised that a robbery investigation was commencing based on Nguyen's report, Detective McDonnell went to police headquarters, spoke with Officer Burks, and spoke with Nguyen. He executed an affidavit to obtain a search warrant. The

next morning, officers executed, pursuant to the search warrant, a forced entry at the alleged scene of the crime. Because of the reported presence of a large handgun during the robbery, the raid was executed by the Reynoldsburg SWAT team. Detective McDonnell presented to Nguyen for identification the three adults secured during the raid and observed Nguyen's response that the two men were not involved in the robbery, and the female was present but not an active participant.

Detective McDonnell identified various items taken from the apartment during the raid, including a digital scale and a pellet pistol. Attempts to locate Nguyen's cell phone by GPS tracking were unsuccessful. Having obtained information from the occupants of the apartment, Detective McDonnell obtained photo identification of appellant to eventually use in a photo lineup. Based on Nguyen's identification of the photo lineup and subsequent information obtained by officers during the course of the investigation, Columbus Police were able to locate and take appellant into custody.

Detective McDonnell described results of his interview with appellant after arrest. Appellant made vague statements at first regarding events on the night in question, but eventually stated that an acquaintance known only as "J" who sold marijuana and was approximately six feet tall, slender, with tattoos on his face, had come over with an Asian-looking individual on the night in question. Presented with a photograph of Nguyen, appellant identified him as the person who accompanied "J" to the apartment. Appellant's sister was present in the apartment, and appellant sent her to a back room when they arrived. Appellant and the two other men sat at a dining room table, and Nguyen took out a concealed container simulating a soda can, unscrewed it, and revealed that it contained Percocet and cocaine. At this point, Nguyen produced and began playing with a toy-like gun. This matched the description of the gun investigators later found in the apartment in a closet. Appellant described Nguyen as extremely intoxicated and jittery during these proceedings.

Detective McDonnell's recollection of some parts of appellant's statement was somewhat imprecise, but he believed that appellant's account of the proposed transaction was that Nguyen would either sell or trade the drugs in the soda can in exchange for marijuana. Appellant and "J" concluded a marijuana transaction between themselves, but appellant did not describe any sort of transaction between Nguyen and the two other men. At this point, according to appellant, "J" and Nguyen left together, and appellant told his

sister to lock the front door. Appellant stated that there were no guns present other than the toy BB gun brought and left behind by Nguyen.

Based on this information, Detective McDonnell proceeded to attempt to locate the tall, tattoo-faced individual known by appellant as "J." Working from information provided by cooperating informants and through use of electronic social media that allowed him to identify a suspect's Instagram account, Detective McDonnell was able to secure photographs of an individual matching the description of the tall, thin, tattoo-faced robber. One photograph depicted this individual holding a silver .44 Magnum long-barreled revolver matching the weapon seen by Nguyen. Based on this strong corroboration, investigators implemented a successful photo lineup of Evans and later executed an arrest.

Detective McDonnell also investigated phone records for the two suspects and matched phone calls from Nguyen's phone to Evans' phone before the robbery as well as calls to appellant afterwards. On cross-examination, Detective McDonnell confirmed that based on these phone records, there was evidence of a three-second call from Nguyen's phone to Evans' phone at 6:21 p.m. on May 15, 2013, the evening in question, at a time when Nguyen's version of events seemed to indicate that he did not know or have any reason to call Evans. The records reflected two later calls from Evans to Nguyen, one at 10:55 p.m. and one at 11:04 p.m., followed by three more from Evans to Nguyen at 11:45, 11:56, and 11:58 p.m. Finally, the records reflected calls at 12:05, 12:11, and 12:15 a.m. on May 16 that corresponded to Nguyen's account of calls made by Evans on Nguyen's phone while they drove. Detective McDonnell conceded that the earlier phone calls in the records did not corroborate Nguyen's account of when calls were placed to and from his phone on the night in question.

Detective McDonnell further stated on cross-examination that no DNA, fingerprint or drug samples were tested for the digital scale or BB gun taken from the apartment during the raid.

The state recalled Nguyen to the stand to explain the discrepancy between the phone records and Nguyen's initial version of events. Nguyen testified that the earlier call at 6:21 p .m. on the night in question may have been, in fact, when he was first approached by appellant and asked for a ride and that Nguyen actually did not offer the ride until later in the evening, when the rest of the events transpired. Similarly, Nguyen testified that the calls at 10:55 and

11:04 p.m. also involved him telling Evans that he was not yet ready to drive, and the calls at 11:45, 11:56, and 11:58 p.m. involved him telling Evans that he was almost ready. The three later calls occurred during the drive, as described in Nguyen's earlier testimony. Nguyen stated that there were several moving trips back and forth from Nguyen's girlfriend's current apartment to the new apartment during this time, accounting for the delay. On re-cross, Nguyen persisted with his new account of the timing of phone calls and the contact between him and Evans on the night in question. Nguyen denied that the delay was due to his efforts to gather $700 in pursuit of a drug deal with Evans and appellant.

*State v. Hamilton*, No. 14AP-291, 2014 WL 7186874, at *3-7 (Ohio App. 10th Dist. Dec. 18, 2014). Petitioner was convicted of aggravated robbery, robbery, kidnapping. On March 12, 2014, the trial court imposed an aggregate term of nine years in prison. *Judgment Entry* (ECF No. 6-1, PageID# 81). Petitioner filed a timely appeal, in which he raised the following assignments of error:

> [I.] APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [II.] THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ENTERED A CONVICTION FOR BOTH AGGRAVATED ROBBERY AND ROBBERY EVEN THOUGH IT MERGED THEM FOR THE PURPOSES OF SENTENCING.

*Id*. at *1. On December 18, 2014, the appellate court affirmed the judgment of the trial court. *Id*. On May 20, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Hamilton*, 142 Ohio St.3d 1467 (2015).

On March 4, 2015, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 6-1, PageID# 199). He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the State had failed to establish a *corpus delicti* or to prove all of the elements of the offenses charged, and a claim that trial counsel had performed in a constitutionally ineffective

manner by failing to call witnesses, investigate, or argue that, at most, the State had established only that Petitioner was guilty of theft. (ECF No. 6-1, PageID# 200). On May 21, 2015, the appellate court denied the Rule 26(B) application. (ECF No. 6-1, PageID# 219). On June 30, 2015, the appellate court denied Petitioner's motion for reconsideration. (ECF No. 6-1, PageID# 229). On August 26, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Hamilton*, 143 Ohio St.3d 1448 (2015).

On December 21, 2015, Petitioner filed the *pro se Petition,* alleging that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence and "violated corpus delicti" (claim one); and that he was denied the effective assistance of appellate counsel (claims two and three). Respondent contends that Petitioner's claims are procedurally defaulted, without merit, or fail to present an issue appropriate for federal habeas corpus relief.

**Claim One**

In claim one, Petitioner alleges, *inter alia*, that his convictions were against the manifest weight of the evidence. However, this claim fails to provide a basis for federal habeas corpus relief. *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 Fed.Appx. 761, 765, n. 4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017)(citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio, Apr. 7, 2011)("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law.").

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence— as opposed to one based upon insufficient evidence—requires the state appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility

of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that a petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Petitioner also alleges in claim one that his sentence "violated corpus delecti." *Petition* (ECF No. 1, PageID# 5). This claim likewise fails to present a basis for federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). "[T]he contention that the prosecution violated the State's corpus delecti rule is not cognizable on habeas corpus review. . . . [T]he State's "rule of independent evidence, or corpus delecti, 'has no independent constitutional footing.'" *Phillips v. Lafler*, No. 06-15192, 2009 WL 1508343, at *4 (E.D. Mich. May 28, 2009)(citing *Gribble v. Johnson*, 8 F.Supp.2d 942, 955 (S.D.Tex. 1998) (quoting *Autry v. Estelle*, 706 F.2d 1394, 1407 (5th Cir.1983)). *See also Hicks v. Berghuis*, No. 10-15161, 2013 WL 3191124, at *8 (E.D. Mich. June 21, 2013)("[T]he conclusion that sufficient evidence was presented to sustain the conviction is dispositive for habeas corpus review regardless of the alleged violation of the corpus delecti rule.").

To the extent that Petitioner also alleges in claim one that the evidence was constitutionally insufficient to sustain his convictions, the Court concludes that, for the reasons discussed below, the claim is procedurally defaulted.

## Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means

that, if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim has been waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause sufficient to excuse a procedural

default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, however, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards,* 529 U.S. at 452 (quoting *Murray,* 477 U.S. at 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v.* Boerckel, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id.*, at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair

'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Id.* at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default has occurred, it must not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray,* 477 U.S. at 495–96.

Petitioner alleges that the evidence is insufficient to sustain his convictions. However, Petitioner did not raise this claim on direct appeal. Instead, he argued only that his convictions were against the manifest weight of the evidence. (*See* ECF No. 9, PageID# 88). As discussed *supra*, that claim fails to provide a basis for federal habeas corpus relief. Petitioner may now no longer present his claim that the evidence is constitutionally insufficient to sustain his convictions to the state courts because of the operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule because of the nature of Petitioner's procedural default.

Moreover, Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman,* 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by

the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006*); Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still secure review of the merits of this claim if he demonstrates cause for his failure to follow the state procedural rule, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). However, a

petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to establish cause and prejudice for his procedural default of his claim of insufficiency of the evidence.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained the exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional

> error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default of this portion of claim one.

### Claims Two and Three

### Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*,—U.S.—, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559

U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

A federal court may not grant habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a

different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

## Merits

Petitioner alleges that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the State failed to establish a corpus delecti, and a claim that he was denied the effective assistance of trial counsel due to his attorney's failure to call witnesses, to investigate, to argue that the victim was performing an illegal act, and to argue at sentencing that Petitioner was guilty, at most, of theft. The state appellate court rejected this claim as follows:

[A]ppellant filed additional pleadings *pro se*, seeking to reopen his appeal pursuant to App.R. 26(B). These allege that his appellate counsel on direct appeal was ineffective for failing to raise two issues for our consideration. Appellant first argues that appellate counsel was ineffective for failing to assert that the state had not proved the corpus delicti of the case. Appellant then asserts that appellate counsel failed to adequately raise arguments relating to the allegedly deficient performance of counsel at trial.

\*\*\*

To prevail on an application under App.R. 26(B) to reopen an appeal based on a claim of ineffective assistance of appellate counsel, appellant must make a "colorable claim" of ineffective assistance of appellate counsel under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). . . . Under the *Strickland* standard as applied in the context of representation on appeal, a criminal defendant must demonstrate first that appellate

counsel was deficient by failing to raise specified issues or arguments, and second that the defendant had a reasonable probability of success if the issue had been presented on appeal. . . .

We assess attorney performance with an eye to the fact that appellate counsel has wide latitude and discretion to decide which issues and arguments will prove most useful on appeal. Appellate counsel is not required to argue or raise assignments of error that are meritless or present little possibility of success on appeal, especially if in doing so counsel may dilute or obscure those arguments that have a real possibility of success. . . .

Appellant's first argument here is that counsel on appeal was ineffective for failing to point out that the state had not proved the corpus delicti of the case. The corpus delicti rule applies to defendants who have confessed to crimes and requires the state to buttress the bare confession with additional evidence that the crime actually occurred: "[b]efore a confession of a crime may be admitted at trial, the state must introduce evidence independent of the confession to establish the corpus delicti of the offense." *State v. Russell,* 10th Dist. No. 09AP-226, 2009-Ohio-5130, ¶ 5. "The corpus delicti rule is designed to protect persons who confess to crimes that they not only did not commit themselves but that were never committed by anyone." *Id.*, citing *State v. Nobles*, 106 Ohio App.3d 246, 261-62 (2d Dist. 1995).

The concept of corpus delicti does not apply in the present case. Appellant never confessed to the crime, and the state's case was therefore based entirely upon evidence independent of any putative confession. Moreover, appellate counsel on direct appeal did raise all colorable issues related to the manifest weight of the evidence supporting appellant's conviction, and to the extent that the concepts of manifest weight and corpus delicti overlap, the matter has been fully reviewed by this court.

Appellant also argues that appellate counsel was ineffective for failing to point out deficiencies in the performance of trial counsel. Appellant argues that trial counsel should have been shown to be ineffective for failure to argue that the evidence supported only a conviction for a lesser theft offense rather than aggravated robbery. Appellant also asserts that trial counsel failed to adequately impeach the victim whose testimony comprised the bulk of the state's case.

Examination of these issues requires us to apply the *Strickland* standard on two levels: first, to assess the performance of trial counsel in the areas of alleged deficiency, and second, to assess the performance of appellate counsel in reviewing the performance of trial counsel.

With respect to the elements of the crimes for which appellant was convicted, our initial review on direct appeal allowed us to fully examine, under the manifest-weight standard, those elements and the evidence supporting conviction. We find no deficiency on the part of trial counsel in failing to argue that a lesser offense occurred, since the elements were properly challenged as part of the trial defense. Likewise, based upon the record at the time of direct appeal from conviction, there is nothing to indicate that trial counsel should or could have developed additional grounds upon which to impeach the victim's testimony. Trial counsel did vigorously cross-examine the witness and successfully raised multiple issues and inconsistencies that could have undermined the credibility of the witness.

Based upon the foregoing, we find the result of appellant's appeal would not have been different had appellate counsel raised the arguments now asserted. Appellant has not demonstrated a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal[.]

*Memorandum Decision* (ECF No. 6-1, PageID# 219-222).

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of

reasonableness." *Poole v. MacLaren*, 547 Fed.Appx. 749, 2013 WL 6284355, at **5 (6th Cir.

Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation

marks omitted) and citing *Strickland,* 466 U.S. at 687). To make such a showing, a petitioner

"must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment." *Poole*, 2013

WL 6284355 at *5 (quoting *Strickland,* 466 U.S. at 687). "To avoid the warping effects of

hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th

Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins,*
> 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger
> v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . .
> Counsel's failure to raise an issue on appeal amounts to ineffective
> assistance only if a reasonable probability exists that inclusion of
> the issue would have changed the result of the appeal. *Id*. citing
> *Wilson*. . . . The attorney need not advance every argument,
> regardless of merit, urged by the appellant. *Jones v. Barnes*, 463
> U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)
> ("Experienced advocates since time beyond memory have
> emphasized the importance of winnowing out weaker arguments
> on appeal and focusing on one central issue if possible, or at most
> on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D.

Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been

denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?
> (2) Was there arguably contrary authority on the omitted issues?
> (3) Were the omitted issues clearly stronger than those presented?
> (4) Were the omitted issues objected to at trial?
> (5) Were the trial court's rulings subject to deference on appeal?
> (6) Did appellate counsel testify in a collateral proceeding as to his
> appeal strategy and, if so, were the justifications reasonable?
> (7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?
(9) Is there evidence that counsel reviewed all the facts?
(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (citations omitted).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington,* 562 U.S. at 105. The Court observed that, while "'[s]urmounting *Strickland 's* high bar is never. . . easy.'. . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult. . . ." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, ——, 130 S.Ct. 1473, 1485 (2010) (and citing *Strickland*, 466 U.S. at 689). The Supreme Court instructed that the standards of *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Id.*

The record does not reflect that defense counsel failed to call any potential defense witnesses who would have assisted the defense. Likewise, the record fails to reflect that further investigation would have assisted the defense. Defense counsel argued in the opening statement that the alleged victim was a convicted thief, a drug user, and a liar, and that his assertion that the Petitioner had robbed him was not true. *Transcript, Vol. II* (ECF No. 6-3, PageID# 807-09). Defense counsel extensively cross-examined the alleged victim and other prosecution witnesses.

Moreover, at sentencing, defense counsel noted that Petitioner maintained his innocence and characterized the incident as one involving a drug deal in which the victim had gotten "ripped off" and had fabricated the allegations in order to exact revenge. *Transcript, Vol. III* (ECF No. 6-4, PageID# 650.) Defense counsel noted that the jury had acquitted him of all of the firearm specifications and that the trial court had acquitted him of having a firearm while under disability, and defense counsel argued that the evidence therefore did not reflect that any gun had been involved. *Transcript, Vol. III* (ECF No. 6-4, PageID# 649-50). The trial court merged Petitioner's sentences on Counts Two and Three with his sentence on Count One, and imposed an aggregate term of nine years' imprisonment. Petitioner had been convicted on charges of aggravated robbery, robbery, and kidnapping, and the record fails to reflect that defense counsel could have made any further arguments on Petitioner's behalf that would have resulted in a lesser sentence.

Petitioner has failed to establish that he was denied the effective assistance of appellate counsel due to his attorney's failure to raise an issue on direct appeal regarding the denial of the effective assistance of trial counsel, or that the state appellate court's decision rejecting such claim warrants federal habeas corpus relief under the standards set forth by the AEDPA.

Claims two and three are without merit.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


  *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

April 10, 2017